UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NADER NADERI | : | |
| Plaintiff, | : | Civil Action No. 21-18958 (JXN) (AME) |
| v. | : | OPINION |
| CONCENTRA HEALTH SERVICES, INC., and UNITED PARCEL SERVICE INC (UPS). | : | |
| Defendants. | : | |

**NEALS**, District Judge:

This matter comes before the Court on Defendant United Parcel Service, Inc.'s ("UPS") motion to dismiss *pro se* Plaintiff Nader Naderi's ("Plaintiff") complaint (ECF No. 1) (the "Complaint") and more definite statement (ECF No. 47) (the "MDS") pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 51); and Defendant Occupational Health Centers of New Jersey d/b/a Concentra Medical Centers' (improperly plead as Concentra Health Services, Inc.) ("Concentra") motion for summary judgment (ECF No. 58) pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposed UPS's motion to dismiss. (ECF No. 57). UPS did not reply. Plaintiff opposed Concentra's motion for summary judgment. (ECF No. 59). Concentra replied. (ECF No. 60). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).

For the reasons set forth below, Concentra's motion for summary judgment (ECF No. 58) is **GRANTED** and all claims against Concentra are **DISMISSED with prejudice**. UPS's motion to dismiss (ECF No. 51) is **GRANTED**; and the following Counts are **DISMISSED** against UPS. Counts One and Two are **DISMISSED with prejudice** as to the Occupational Safety and Health

Act ("OSHA") claims.  Counts Two and Six are **DISMISSED without prejudice** as to the negligence, workers' compensation, and collective bargaining agreement claims.  And Count Six is **DISMISSED without prejudice** as to the Title VII claim.  Plaintiff may file an amended complaint within 30 days from the date hereof that is consistent with this Opinion.

### I. BACKGROUND AND PROCEDURAL HISTORY

#### A. UPS and Concentra File Dispositive Motions

On October 18, 2021, Plaintiff filed the Complaint, which contained 362 separate allegations and six causes of action against UPS and Concentra.  On February 1, 2022, UPS filed a motion to dismiss or for a more definite statement.  (ECF No. 22).  On May 11, 2022, Plaintiff opposed.  (ECF No. 42).  On May 18, UPS replied.  (ECF No. 43).

On March 9, 2022, Concentra filed a motion for summary judgment.  (ECF No. 27).  On May 10, 2022, Magistrate Judge André M. Espinosa denied the motion because Concentra moved without leave of Court (ECF No. 41 at 3) (the "May 10 Order").

On August 1, 2023, the Court entered a Memorandum Order (ECF No. 45) (the "Memorandum Order") that denied UPS's request to dismiss the Complaint and granted the request for a more definite statement.  The Court found in pertinent part that the Complaint's allegations were "unintelligible, difficult to follow, lack specificity, [] do not put UPS on notice of the claims against it[,]" and did not comply with the Federal Rules of Civil Procedure.  Thus, a more definite statement was needed.  (*Id.* ¶ 14).

On September 29, 2023, Concentra requested leave to file a motion for summary judgment (*see* ECF No. 52), which Magistrate Judge Espinosa granted.  (ECF No. 56 at 3).

B. **Plaintiff Files the More Definite Statement**

On August 30, 2023, Plaintiff filed the MDS, which contains 79 allegations and three causes of action alleging a variety of federal and state statutes, regulations, and provisions of bargaining agreements. (*See, gen.,* ECF No. 47). The relevant facts follow.[1]

"Plaintiff is a collective bargaining unit employee, who works for UPS as a loader/preloader." (UPS's brief (ECF No. 51-1) ("UPS's Br.") at 6) (citation omitted). "Plaintiff's collective bargaining representative is the International Brotherhood of Teamsters ('IBT') and their respective regional local, Local 177 ('union')." (*Id*. at 6) (citation omitted).

On October 21, 2019, Plaintiff "suffered a work-related injury to his right hand, for which he [] received treatment through" Concentra and "is currently on leave of absence . . . ." (*Id*. at 6) (citation omitted). On October 22, 2019, Plaintiff "sought medical treatment with Olapado Babatunde, MD, a physician outside of UPS's workers compensation insurance's medical provider network." (*Id.* at 6) (citation omitted). Dr. Babatunde "provided him with work restrictions of no work until further notice." (*Id.* at 6) (citation omitted).

On October 30, 2019, Plaintiff "sought treatment from another physician, Carissa Meyer, MD, but on the same day, UPS requested [that] he be seen by Concentra, a physician's office within the workers' compensation insurance carrier's medical provider network." (*Id*. at 6) (citations omitted). "Once seen by Concentra, Plaintiff was given a splint which he was to wear for 8 hours a day and returned to work his entire shift." (*Id*. at 6) (citations omitted). "Plaintiff was then provided with temporary alternative work" or "TAW", "as required by Article 14 Section 2 of the IBT's National Master UPS Agreement[.]" (*Id.* at 6-7) (citation omitted).[2]

---

[1] The factual allegations are taken from the allegations in the MDS that are accepted as true (*Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010)) and UPS's Br. that cites to the MDS.
[2] When deciding a motion to dismiss under 12(b)(6), courts may review documents "explicitly relied upon in the complaint . . . ." *Hart v. Electronic Arts, Inc.*, 740 F. Supp. 2d 658, 663 (D.N.J. 2010) (internal quotation marks and

UPS directed Plaintiff to "perform TAW by filing paperwork and reviewing safety topics" instead of his regular duties. (*Id*. at 7) (citations omitted). However, Plaintiff "was unable to perform these tasks and [] injured his left hand while performing" the TAW. (*Id*. at 7) (citation omitted). "On November 18, 2019, Plaintiff was seen by Concentra for treatment to his left hand and released back to work without modified work duties." (*Id*. at 7) (citation omitted). Plaintiff "sought the help of his union, Local 177, and managed to 'persuade' UPS to provide Plaintiff medical treatment for his left hand." (*Id*. at 7) (citations omitted).

On "November 25, 2019, UPS breached its contractual obligations under [] UPS's and IBT's collective bargaining agreement by not granting [Plaintiff] a requested promotion" from his current role. (*Id*. at 7) (citations omitted).[3]

Plaintiff was on workers' compensation leave "from December 12, 2019, through January 28, 2020 . . . ." (*Id*. at 7) (citations omitted). At some point, Plaintiff filed an "informal complaint" with OSHA while being treated under the supervision of UPS's workers compensation carrier, Liberty Mutual. (MDS ¶¶ 33-34).

Plaintiff returned to UPS January 29, 2020, and was again provided "with TAW until March 4, 2022." (UPS's Br. at 7) (citations omitted). Plaintiff had two surgeries in January 2021 and October 2022, resulting in permanent restriction of 20 lbs. (MDS ¶¶ 41, 42).

The MDS alleges the following causes of action:

 1. "First Claim for Relief" (Count One) alleging "(v)iolation of 29 U.S.code (sic) § 657 inspection, investigation, and record keeping violation of 29 CFR §1904.7 General recording criteria" (ECF No. 47 at ¶¶ 49-57);

---

citation omitted). Here, Plaintiff has incorporated the Teamster's National Master UPS CBA and Local 177's Supplemental Agreement by citing to specific contractual rights and articles within the agreements in drafting the MDS. (ECF No. 47). Indeed, Plaintiff relies on these agreements in formulating the basis of his complaint, and alleges a breach of contract claim, known as a hybrid Section 301 cause of action. Therefore, the Court may consider both collective bargaining agreements here.
[3] The MDS does not specify when Plaintiff originally requested the promotion.

    2.     "Second Claim for Relief" (Count Two) alleging "(n)egligence(,) (v)iolation of 29U.S.C. § 654(,) violation (of) Rules of New Jersey Workers Compensation 12:235-11.1(a)(b)(c)(,) violation of (N)ew Jersey Workers Compensation 34:1519(,) (b)reach of National Master United (P)arcel Agreement Article 14 section(,) (and) (b)reach of (c)ollective bargaining supplemental agreement Article 52 section 1(B0(3)" (*Id*. at ¶¶ 58 - 65);  and

    3.     "Sixth Claim for Relief" (Count Six)[4] alleging "Coerce – (d)iscrimination – retaliation (c)laim (,) violation of U.S.C. § 158 (a)(1)(,) violation of U.S.C. §157(,) violation (of) the (S)tate of (N)ew (J)ersey (W)orkers (C)ompensation Discrimination (Act,) N.J.S.A. 34:15:39-1(,) (and) violation of (the) Collective Bargaining Agreement" (*Id*. at ¶¶ 66-79).

    **C.**     <u>**UPS and Concentra's Pending Dispositive Motions**</u>

On September 27, 2023, UPS filed the pending motion to dismiss. (ECF No. 51).  On November 30, 2023, Plaintiff filed opposition. (ECF No. 57).  UPS did not reply.  On January 5, 2024, Concentra filed the pending motion for summary judgment. (ECF No. 58).  On November 14, 2024, Plaintiff opposed. (ECF No. 59).  On January 29, 2024, Concentra replied. (ECF No. 60).  The motions are ripe for consideration.

**II.**     <u>**LEGAL STANDARD**</u>

    **A.**     <u>**Motion to Dismiss**</u>

Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, ellipses, and citation omitted).  On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. Of Allegheny*, 515

---

[4] The MDS contains no intervening claims or counts between the "Second Claim to Relief" and the "Sixth Claim for Relief." (*See* MDS at pp. 5-6).

F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the() veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

### B. Motion for Summary Judgment

Summary judgment is appropriate where the Court is satisfied "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material "only if it might affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citations omitted). If the movant satisfies its burden, the nonmoving party "counter[s] with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted). Ultimately, the Court's role is to "determine whether there is a genuine issue for trial" such that a reasonable jury could return a verdict for the nonmoving party. *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000) (citations omitted).

### III.     DISCUSSION[5]

#### A.     UPS's Motion to Dismiss

##### 1.     Plaintiff's OSHA Claims within the First Claim for Relief (Count One) and the Second Claim for Relief (Count Two) are Barred

Plaintiff appears to allege claims against UPS for injuries he suffered in the course of his employment due to alleged OSHA violations. (Am. Compl. ¶¶ 1-47, 49-57). It is well-settled that OSHA does not create a private right of action. *See, e.g., Ries v. Nat'l R.R. Passenger Corp.,* 960 F.2d 1156, 1164-65 (3d Cir. 1992); *Dravo Corp. v. Occupational Safety & Health Review Comm'n,* 613 F.2d 1227, 1230 n.2 (3d Cir. 1980); *Kozar v. AT & T,* 923 F. Supp. 67, 69 (D.N.J. 1996) (citations omitted). Because Plaintiff does not have standing to bring a private action for OSHA violations, the OSHA violation claims (Counts One and Two) are **dismissed with prejudice**.

---

[5] Initially, the parties have each been procedurally deficient in the proceedings leading up to the instant motions. First, in the May 10 Order, Magistrate Judge Espinosa directed that the "remaining parties" file letters following the undersigned's decision on UPS's previous motion to dismiss. (ECF No. 41 at 4). The parties did not do so. (*See* ECF No. 56 at 2[5]) ("[N]one of the parties filed a letter requesting a status conference or proposing a schedule for any remaining discovery" after the Memorandum Order was entered).

Second, in filing the motion for the November 6, 2023 motion day (ECF No. 51 at 1), Plaintiff's opposition was due no later than October 23, 2023. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY'S 2023 MOTION DAYS, https://www.njd.uscourts.gov/sites/njd/files/2023Motions.pdf. Plaintiff filed his opposition on November 30, 2023, or 38 days after the due date. As a result, this is Plaintiff's second time filing an opposition more than 30 days after the due date, the Court nevertheless considered it due to Plaintiff's *pro se* status.

Third, prior to filing the motion to dismiss, UPS was required to first file a letter requesting a pre-motion conference. (Court's Rules and Procedures, IV(A)). Specifically, "[i]n an effort to resolve cases expeditiously, before bringing a <u>motion to dismiss</u>, . . . a party must submit a letter, not to exceed <u>three</u> (3) single-spaced pages, requesting a pre-motion conference." (*Ibid.*). Plaintiff was to then file a responsive letter. (*Ibid.*). UPS did not do so. The Court reviewing the matter *ex post facto*, finds that a pre-motion conference would have likely proved unwarranted.

Fourth, and finally, Local Civil Rule 56.1(a) requires parties to "furnish a statement which sets forth material facts as to which there does not exist a genuine issue" that must "be a separate document (not part of a brief) . . . ." The Court may also direct that the parties "properly support or address" an assertion of fact or "issue any other appropriate order." Fed. R. Civ. P. 56(e)(1), (4). Here, Concentra did not submit a separate statement of material facts not in dispute. Instead, Concentra included a "Statement of Facts" in its brief. (Concentra's Mot. at 13-15).

Accordingly, though the Court takes no action now, the parties are reminded that failure to comply with Court orders, including Magistrate Judge Espinosa's additional direction to file appropriate letters (ECF No. 56 at 3), as well as the Federal Rules of Civil Procedure and Local Civil Rules may result in appropriate sanctions.

### 2. Plaintiff has not Pled a Viable Workers' Compensation Claim (Counts Two and Six) against UPS

Generally, "[u]nder New Jersey law, workers' compensation is the exclusive remedy afforded an employee injured in the course of [] employment." *Oquendo v. Bettcher Indus.,* 939 F. Supp. 357, 360 (D.N.J. 1996), *aff'd,* 118 F.3d 1577 (3d Cir. 1997); *Basil v. Wolf,* 193 N.J. 38 (2007); *see also* Workers' Compensation Act, N.J.S.A. § 34:15-8. New Jersey's Workmen Compensation system involves a "trade-off whereby employees relinquish[ ] their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffer[ ] injuries by accident arising out of and in the course of employment." *Fermaintt ex rel. Est. of Lawlor v. McWane, Inc.,* 694 F. Supp. 2d 339, 344 (D.N.J. 2010) (citing *Millison v. E.I. du Pont de Nemours & Co.,* 101 N.J. 161, 174 (1985).

To avoid the exclusivity bar, Plaintiff must show that the employer's conduct was sufficiently flagrant as to constitute an "intentional wrong." *See Millison,* 101 N.J. at 179. This is a difficult hurdle and the subject of a two-prong test: a conduct and context prong. First, the conduct of the employer must be such that there was "substantial certainty" of injury or death. *Millison,* 101 N.J. at 178. "The mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Id.* at 177 (quoting W. Prosser and W. Keeton, *The Law of Torts,* § 80 at 569 (5th ed.1984)). Also, a defendant does not engage in an intentional wrong when he is negligent by acting in the belief that the act is causing an appreciable risk of harm to another or when the defendant is acting recklessly or wantonly facing even a greater risk. *Id.*

The court in *Millison* recognized that in adopting a substantial certainty standard "that every undertaking, particularly certain business judgments involve some risk, but that willful employer misconduct was not meant to go undeterred." *Id.* at 178. Therefore, while "the distinctions between negligence, recklessness, and intent are obviously matters of degree, albeit

8

subtle ones," courts must determine whether "virtual certainty" of injury or death existed under the conduct prong. *Id.* at 178.

Here, Plaintiff has not sufficiently alleged that UPS's conduct was sufficiently flagrant as to constitute an "intentional wrong." Moreover, in New Jersey "there is no direct action available to an injured employee against the employer, or against the employer's insurer when the insurer takes no action beyond that which is required under the Act and the carrier's insurance policy." *Basil,* 193 N.J. at 38. Under such circumstances, injured employees must pursue their exclusive remedies in the Division of Workers' Compensation, "even when an employer, acting through its insurer, does not furnish necessary medical treatment when requested to do so by an employee." *Id.* (citation omitted)*; see also Rothfuss v. Bakers Mut. Ins. Co.,* 107 N.J. Super. 189, 193 (N.J. Sup. Ct. App. Div. 1969).

Accordingly, the Second Claim for Relief (Count Two) sounding in negligence and those within the Sixth Claim (Count Six), each for violations of New Jersey's Workers' Compensation statute, are **dismissed without prejudice**.

> **3. Plaintiff's Claims that are Dependent on Contractual Rights as Defined by a Collective Bargaining Agreement (Counts Two and Sixth) are Dismissed Because Plaintiff has not Alleged Exhaustion of the Grievance-Arbitration Requirements Under the CBA**

Plaintiff alleges in his Second and Sixth Claims of the MDS that UPS breached the CBA. (UPS's Br. at 13) (citation omitted). Because these claims fall under the CBA, they are dismissed.

Based on the face of the MDS, Plaintiff alleges that "at all relevant times the parties were acting under the terms of the CBA and UPS 'breached' the CBA by: (1) not providing him with TAW, (2) failing to contribute to his pension plan while he was on leave, (3) failing to accommodate him[,] and (4) failing to promote him as required by the CBA." (*Id.* at 13) (citations omitted). Section 301(a) of the Labor Management Relations Act ("LMRA") provides for federal

jurisdiction over disputes regarding the CBA. The statute states in relevant part that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Although the statute expressly addresses only federal jurisdiction, "this provision is not merely jurisdictional, but is also one that calls on the federal courts to create a uniform federal common law of collective bargaining, with the primacy of arbitral resolution of industrial disputes as its centerpiece." *Voilas v. Gen. Motors Corp.,* 170 F.3d 367, 372 (3d Cir. 1999) (citation omitted). Thus, § 301 requires "federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209 (1985) (citation omitted).

Because the breach of contract claim alleges a violation of specific provisions in the CBA, the claim must be brought under § 301. *Allis–Chalmers,* 471 U.S. at 211. Prior to suing, however, an employee seeking to vindicate personal rights under a CBA must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37 (1987); *Angst v. Mack Trucks, Inc.,* 969 F.2d 1530, 1537 (3d Cir. 1992). Exhaustion is a prerequisite to being heard in federal court. *See Hughes v. United Parcel Serv., Inc.,* 639 F.App'x 99, 104 (3d Cir. 2016); *Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 168 (3d Cir. 1999) (citation omitted).

Here, the MDS is devoid of any allegations concerning Plaintiff's attempts to grieve the breach of contract claim. Plaintiff's failure to allege or otherwise demonstrate that he exhausted the grievance procedures mandated in the CBA precludes judicial relief for breach of the CBA.

Accordingly, those claims within the Second Claim and Sixth Claim for breach of the CBA are **dismissed without prejudice**.

> 4. **Because Plaintiff has not Exhausted the Administrative Procedures as Required by Title VII the Discrimination Claims at the Sixth Claim for Relief (Count Six) are Dismissed**

To plead a claim under Title VII, "a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir. 1997). Specifically, a plaintiff must first file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice before filing a complaint in court. 42 U.S.C. § 2000e-5(e)(1), (f)(1). The plaintiff must also first obtain a right-to-sue letter. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001). Defendants "bear[] the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." *Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir. 1997) (citations omitted).

Here, Plaintiff alleges that he "filed the charge of discrimination against UPS" while the EEOC's investigation was still "pending" on May 24, or two years after he filed this action. (Am. Compl. ¶ 45). Accordingly, Plaintiff has not exhausted all administrative remedies as required under Title VII and the Sixth Claim (Count Six) of the MDS claim is **dismissed without prejudice**.

### B. Concentra's Motion for Summary Judgment

As part of the general allegations, Plaintiff alleges that he was treated at Concentra on October 30, 2019, and prescribed a splint for his injured hand, placed on work restrictions, and scheduled for follow up physical therapy at Concentra. (MDS ¶ 14). Further, that Plaintiff started physical therapy sessions at Concentra, Concentra changed "the course of Plaintiff's right hand treatment" and Plaintiff's prescription to over-the-counter medicine, and removed Plaintiff's splint. (*Id.* ¶¶ 17-18).

In the First Claim for Relief, Plaintiff alleges that "Concentra enable[d] UPS to violate" OSHA and the New Jersey Workers Compensation Act regulations. (*Id.* ¶¶ 54-55). In the Second Claim for Relief, Plaintiff appears to allege that UPS did not "promptly furnish the insurance carrier with" information regarding the accident, that Plaintiff's injuries required "medical treatment beyond [] first aid," but nevertheless UPS sent Plaintiff to "Concentra for medical treatment . . . ." (*Id.* ¶ 61). Within the Sixth Claim for Relief, Plaintiff reiterates his allegation that "UPS coerced [P]laintiff by taking him to Concentra[,]" which "deprived him from standard medical treatment" resulting in a "deformed right hand finger[,]" which has since "bec[o]me permanent[ly] disabled . . . ." (*Id.* ¶ 69).

### 1. Plaintiff's OSHA Claims within the First Claim for Relief (Count One) and the Second Claim for Relief (Count Two) are Barred

To the degree Plaintiff brings claims under OSHA relating to Concentra, these claims fail on the same legal basis as the similar claims against UPS.[6] Specifically, "OSHA does not provide for a private right of action . . . ." *Okocha v. Express Pers. Servs., Inc.*, No. 5-182, 2005 WL 8176153, at *2 (D.N.J. Aug. 19, 2005); *see also Dravo Corp.,* 613 F.2d at 1230 n.2. Accordingly, Plaintiff does not have standing to bring direct claims for OSHA violations. And to the extent Counts One and Two contain such claims, they are **dismissed with prejudice**.

### 2. Plaintiff's Negligence and "Medical Malpractice" Claims against Concentra are Dismissed for Failure to serve an Affidavit of Merit

"An action at law has been permitted against a workers' compensation carrier when the carrier has performed services that go beyond providing workers' compensation coverage to an employer." *Basil,* 193 N.J. at 55 (citations omitted); *see also Davis v. OneBeacon Ins. Grp.,* 721 F. Supp. 2d 329, 341 (D.N.J. 2010). A compensation carrier operating "its own clinic for treatment

---

[6] *See* III, A., 1., *infra*.

12

of injured" workers is subject to a common law action for alleged negligent treatment. *Mager v. United Hospitals of Newark,* 88 N.J. Super. 421, 428 (N.J. Super. Ct. App. Div. 1965), *aff'd. o.b.,* 46 N.J. 398 (1966).

In *Mager,* the insurer took it upon itself to directly and physically *perform* the services required under the Act by operating its own clinic. *Id.*, 88 N.J. Super. at 422-23. The plaintiff's complaint for medical malpractice alleged that the clinic's actions during the delivery of medical care negligently caused injury to the worker. *Ibid. Mager* "explains that, in that instance, the 'jural personalities' of the employer and the insurer were not one and the same and that, therefore, the worker could bring a common-law action against the insurer for the insurer's independently wrongful actions." *Basil,* 193 N.J. at 59 (citing *Mager,* 88 NJ Super. at 426). The rationale is "that the jurisdiction of our law courts was posited on the carriers' undertaking to treat, a duty not imposed on them by the Workers' Compensation Act." *Dillon v. Liberty Mut. Ins. Co.,* No. 10-5853, 2011 WL 3163252, at *3 (D.N.J. July 25, 2011) (citation omitted).

Here, Plaintiff failed to serve an Affidavit of Merit as required. New Jersey's Affidavit of Merit statute requires that an Affidavit of Merit be filed sixty (60) days after the filing of Defendant's Answer. N.J.S.A. 2A:53A-27. The statute proscribes a maximum possible extension of an additional sixty days. *Id.* Failure to timely file an Affidavit of Merit generally "requires dismissal of the action with prejudice." *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.,* 692 F. 3d 283, 305 (3d Cir. 2012) (citing N.J.S.A. 2A:53A-29). Consequently, this is detrimental to Plaintiff's claims against Concentra.

Indeed, a District Court for the District of New Jersey must apply the Affidavit of Merit statute to cases in which a medical malpractice allegation is pled. *Chamberlain v. Giampapa,* 210 F.3d 154 (3d Cir. 2000). The Affidavit of Merit statute requires "plaintiffs to make a threshold

13

showing" of merit. *Vitale v. Carrier Clinic, Inc.,* 409 F.App'x 532, 533-34 (3d Cir. 2010) (citation omitted). The statute seeks to "dispose of meritless malpractice claims early in the litigation" and to "allow meritorious claims to move forward unhindered." *Snyder v. Pascack Valley Hosp.,* 303 F. 3d 271, 274 (3d Cir. 2002) (internal quotation makers and citation omitted). Further, unique factors applicable to Plaintiff, such as appearing *pro se*, do not excuse the requirement to file an Affidavit of Merit. *See Coward v. Lanigan*, No. 13-2222, 2014 WL 6886017, at *3 (D.N.J. Dec. 4, 2014); *Lee v. Thompson,* 163 F.App'x 142, 144 (3d Cir. 2006).

Here, the initial Answer on behalf of the moving party was filed with the Court on November 8, 2021. Therefore, calculating the maximum 120-days from the initial filed Answer, Plaintiff was obligated under the statutes and case law to serve an Affidavit of Merit as to Concentra by March 8, 2022. *See Douglas v. Obade,* 359 N.J. Super. 159, 160 (App. Div. 2003) (120-day deadline has been characterized as the "end of the line" and a "drop-dead date.") (Internal quotation marks omitted). Because Plaintiff failed to timely serve an Affidavit of Merit, and the time has expired, Plaintiff's claims for negligence, medical negligence, and/or medical malpractice against Concentra are **dismissed with prejudice**.[7]

## IV.    CONCLUSION

For the reasons set forth above, UPS's motion to dismiss (ECF No. 51) is **GRANTED** and Concentra's motion for summary judgment (ECF No. 58) is **GRANTED**.

DATED: 6/12/2024

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge

---

[7] Because the MDS is the operative pleading, the Court need only address the First, Second, and Sixth claims for relief in the MDS (*see* MDS at 5-7), and not the Third, Fourth, and Fifth claims in the Complaint (*see* Compl. at 25-34), which were not raised in the MDS. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity" and, thus, "the most recently filed amended complaint becomes the operative pleading.") (citations omitted); *Kreis v. Northampton Cnty. Prison*, 564 F. Supp. 3d 359, 361 (E.D. Pa. 2021) ("[A]mended complaints effectively constitute an abandonment of any prior complaints filed by a plaintiff.") (internal quotation marks, ellipses, and citation omitted).